UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JASON WILKINS,                      Civil No. 09-1754 (NLH)

        Petitioner,

        v.                          OPINION

LARRY GLOVER, et al.,

        Respondents.

APPEARANCES:

        JASON WILKINS, #636088B
        South Woods State Prison
        215 South Burlington Rd., 1-1-Left
        Bridgeton, NJ 08302
                *Pro Se Petitioner*

        JENNIFER L. BENTZEL, Assistant Prosecutor
        BURLINGTON COUNTY PROSECUTOR
        P.O. Box 6000
        Mt. Holly, NJ 08060-6000
                *Attorneys for Respondents*


HILLMAN, District Judge:

        Jason Wilkins filed a Petition for a Writ of Habeas Corpus

under 28 U.S.C. § 2254 challenging a judgment of conviction

filed in the Superior Court of New Jersey, Burlington County, on

June 16, 2000.  The challenged judgment imposed a 20-year term

of imprisonment, with an 85% period of parole ineligibility,

after a jury found Wilkins guilty of burglary, robbery, criminal

restraint, aggravated assault, and other offenses.  The State filed

an Answer and the record and, although given an opportunity to

do so, Wilkins did not file a reply.  After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

## I.  BACKGROUND

### A.  The Crimes

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), state court factual findings are presumed correct unless rebutted by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1).  As Wilkins has not rebutted the factual findings of the Superior Court of New Jersey, the Court will rely on those findings.  The Appellate Division found that the charges arose from "an armed entry into the victim's home, where three men were responsible for beating and shooting Kevin White ("Kevin"), tying up others in his family, including Kevin's mother, Pauline White ("Pauline"), and his sister, Georgette White ("Georgette"), ransacking their house, and stealing cash and personal property before escaping." *State v. Wilkins*, Docket No. A-1739-00T4 sl. opinion (N.J. Super. Ct., App. Div., Oct. 20, 2003) (ECF No. 17-10).

B. The State Court Proceedings

On February 10, 1998, a grand jury sitting in the Superior Court of New Jersey, Law Division, Burlington County, returned a 14-count indictment charging Wilkins with armed robbery, burglary, criminal restraint, aggravated assault and other crimes against Kevin White and his mother at their home in Fieldsboro, New Jersey. The indictment also brought charges against Marvin Hobbs, Steven McNeil, and Natalie Nurse-Myers. After two mistrials, a jury found Wilkins guilty of second-degree burglary, two counts of first-degree robbery, third-degree criminal restraint, third-degree aggravated assault, fourth-degree aggravated assault, three counts of third-degree criminal restraint, second-degree possession of a weapon for an unlawful purpose, third-degree unlawful possession of a weapon, third-degree theft by unlawful taking, and fourth-degree criminal mischief. The trial judge imposed an aggregate 20-year term of imprisonment with an 85% period of parole ineligibility. Wilkins appealed, and on October 20, 2003, the Appellate Division of the Superior Court of New Jersey affirmed. *See State v. Wilkins*, Docket No. A-1739-00T4 sl. opinion (N.J. Super. Ct., App. Div., Oct. 20, 2003) (ECF No. 17-10). The Supreme Court of New Jersey denied certification on January 22, 2004. *See State v. Wilkins*, 178 N.J. 454 (2004) (table).

Wilkins filed his first petition for post-conviction relief in the trial court on February 17, 2004.  The trial court denied relief on June 15, 2006, without conducting an evidentiary hearing. On October 31, 2007, the Appellate Division affirmed, and on April 21, 2008, the Supreme Court of New Jersey denied certification. *See State v. Wilkins,* 2007 WL 3170185 (N.J. Super. Ct., App. Div., Oct. 31, 2007), *certif. denied,* 195 N.J. 422 (2008) (table).

Wilkins thereafter filed a motion to correct an illegal sentence in the trial court.[1]  (ECF No. 17-22.)  The trial court denied the motion on September 16, 2009.  (ECF No. 17-24.)  Wilkins appealed, and on June 24, 2013, the Appellate Division affirmed the order denying the motion.  *See State v. Wilkins,* 2013 WL 3155354 (N.J. Super. Ct., App. Div., June 24, 2013).  The Supreme Court of New Jersey denied certification on January 17, 2014.  *See State v. Wilkins,* 217 N.J. 52 (2014) (table).

C.    Procedural History of § 2254 Petition

On April 8, 2009, Wilkins handed his § 2254 Petition to prison officials for mailing to the Clerk of this Court. (ECF No. 1 at 15.)  The Clerk received the § 2254 Petition on April 14, 2009.

_____

[1] The record does not reveal the date on which Wilkins filed the motion.

This Court dismissed the Petition without prejudice as unexhausted by Order and accompanying Opinion entered on April 27, 2009.  (ECF Nos. 2, 3.)

On April 16, 2014, after he had exhausted state court remedies, Wilkins filed a motion to reopen this case and to relate the filing date back to the date of the filing of the Petition. (ECF No. 4.)  On November 13, 2014, the Court reopened the case and notified Wilkins of his rights under *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000).  (ECF No. 7.)  In response, Wilkins asked the Court to rule on the § 2254 Petition as is.  The Petition raises the following grounds, which are set forth below verbatim:

Ground One:  PROSECUTOR'S BAD FAITH OR INEXCUSABLE NEGLECT BARS DEFENDANT'S RETRIAL ON GROUNDS OF DOUBLE JEOPARDY.

Supporting Facts:  The Prosecutor severely prejudiced the defense by introducing during the defense presentation that Defendant was incarcerated.  Thus[, the prosecutor] violated fundamental restraints against prosecutorial excess.  It was obviously intentional and severely damaging to Defendant's right to a fair trial.  As a result of this statement, the defense was forced to move for a mistrial, barring Defendant's retrial on grounds of Double Jeopardy.

Ground Two:  DEFENDANT'S DUE PROCESS WAS MARRED WHEN TRIAL COURT ERRED IN ALLOWING THE STATE TO USE A PHOTOGRAPH FROM AN OUT OF COURT IDENTIFICATION BY GEORGETTE WHITE.

Supporting Facts:  Ms. White['s] opportunity to view the criminal at the time of the crime was limited to 30-45 seconds.  She also testified that the gunman's face was visible only from the nose to the forehead, the remainder being covered by a hat and a scarf.  The limited degree

5

of certainty of Ms. White's identification was directly attributed to being awaken[ed] by a gunman in a darkened room, as testified.  Less than a month after the identification, after having seen Jason Wilkins in person, Ms. White filed a statement that she had made a mistake in her identification.

Ground Three:  INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL – TRIAL COUNSEL FAILED TO OBJECT TO THE OUT OF COURT IDENTIFICATION BY MICHAEL WHITE AS INADMISSIBLE HEARSAY.

Supporting Facts:  Det. Anthony McFarland testified before the jury that Michael White identified Jason Wilkins as the gunman because he was told so by his mother, Pauline White.  Trial counsel never object[ed], [nor did] Appellate counsel attack[] it.  Therefore[,] the defense never had the opportunity to exercise it[]s constitutional right of confronting or cross-examining such information for it[]s suggestive of truthfulness.

Ground Four:  THE STATE FAILED TO DISCLOSE DOCUMENTATION SUPPORTING THE IDENTIFICATION OF STEVEN MCNEIL, BY MICHAEL WHITE, ON DECEMBER 24, 1997.

Supporting Facts:  On December 24, 1997, Pauline White and inmate Michael White, in the visiting area of Burlington County Jail, identified Defendant as having been the perpetrator of the subject crime.  However, the Defendant was not present in the visiting area when such identification allegedly occurred.  The visitor's log for December 24, 1997 is devoid of the Defendant having any visitors that day.  Mr. White actually identified Stephen McNeil as the perpetrator.  Significantly, the State failed to provide the visiting log showing Mr. McNeil having a visitor.  Withholding material evidence in violation of <u>Brady</u> deprived the factfinders of learning of the error of Michael White in identifying Jason Wilkins as the perpetrator, thereby changing the trial's outcome.

(ECF No. 1 at 5, 7, 8, 10.)

The State filed an Answer (and the record), arguing that Wilkins is not entitled to habeas relief.  Wilkins did not file a reply.

## II.  STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets several limits on the power of a federal court to grant a habeas petition to a state prisoner.  *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[2] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the

---

[2] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." *Shotts v. Wetzel,* 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

7

facts in light of the evidence presented in the State court proceeding.'" *Parker v. Matthews*, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).   "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015).   The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.   *See Pinholster*, 563 U.S. at 181.

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court.   *See Yarborough v. Alvarado*, 541 U.S. 652, 660 (2004).   "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision.   *Woods*, 135 S.Ct. at 1376 (quoting *White v. Woodall,* 134 S.Ct. 1697, 1702 (2014), and *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme

Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." *Williams*, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.

Where a petitioner seeks habeas relief pursuant to § 2254(d)(2) on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); *see Miller-El v. Dretke*, 545 U.S. 231, 240 (2005).  Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).

9

<u>III.   DISCUSSION</u>

A.   <u>Double Jeopardy</u>

In Ground One, Wilkins asserts that his retrial violated the Double Jeopardy Clause because the prosecutor intentionally and in bad faith provoked a mistrial by introducing evidence during trial indicating that Wilkins was incarcerated.  The State argues that the trial judge's finding that the prosecutor's mistake was unintentional was not an unreasonable determination of the facts in light of the evidence presented and that the New Jersey courts reasonably applied governing Supreme Court precedent.

The Double Jeopardy Clause forbids that "any person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Double Jeopardy Clause "protects a criminal defendant from repeated prosecutions for the same offense." *Oregon v. Kennedy*, 456 U.S. 667, 671 (1982). "The Double Jeopardy Clause, however, does not offer a guarantee to the defendant that the State will vindicate its societal interest in the enforcement of the criminal laws in one proceeding." *Id.* at 672.

In *Kennedy*, the Oregon Court of Appeals found that the Double Jeopardy Clause barred a retrial because the prosecutor's

10

misconduct in asking an expert witness if the reason that the witness had never done business with the defendant was "because he is a crook" amounted to "overreaching," even though the trial court had determined that it was not the prosecutor's intention to cause a mistrial. *Kennedy*, 456 U.S. at 669.  The Supreme Court held that, where the defendant moves for a mistrial, the Double Jeopardy Clause bars retrial only where the prosecutor intended to provoke the defendant into seeking a mistrial:

> Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause . . . Only where the governmental conduct in question is intended to "goad" the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion.

*Kennedy*, 456 U.S. at 675-76.

The Supreme Court held in *Kennedy* that where the Oregon courts found that "the prosecutorial conduct culminating in the termination of the first trial . . . was not so intended by the prosecutor, that [was] the end of the matter for purposes of the Double Jeopardy Clause[.]" *Id.* at 679.

In rejecting the double jeopardy claim in this case, the Appellate Division found that

11

> the prosecutor made an inadvertent error by asking a
> question that allowed the jury to learn that defendant
> had served time in jail and had a criminal record.
> Defendant's request for a mistrial was granted over
> the State's objection.  As the trial judge expressly
> found, there is no evidence that the prosecutor
> intentionally provoked the second mistrial.

(*State v. Wilkins*, ECF No. 17-10 at 7.)

The AEDPA requires this Court to presume the correctness of the Appellate Division's factual finding that the prosecutor did not intend to provoke Wilkins into seeking a mistrial; Wilkins has not rebutted this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Miller-El v. Dretke*, 545 U.S. at 240 (a district court must "presume the [state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'").  Wilkins has not shown that this finding was based on an unreasonable determination of the facts in light of the evidence presented and he is not entitled to habeas relief under 28 U.S.C. § 2254(d)(2).

Nor is Wilkins entitled to habeas relief under 28 U.S.C. § 2254(d)(1) because the Appellate Division did not unreasonably apply *Kennedy* or other Supreme Court precedent when it held that the Double Jeopardy Clause did not bar his mistrial. *See* 28 U.S.C. § 2254(d)(1) and (d)(2); *cf. United States v. Williams*,

12

472 F.3d 81, 88 (3d Cir. 2007) ("Because the applicable standard for a double jeopardy bar as a result of prosecutorial misconduct requires a showing that the Government had in fact intended to goad the defendant into requesting a mistrial, and there was no such showing in this case, it was error to dismiss the indictment.")

B.  <u>Due Process:  Admission of Out-of-Court Identification</u>

In Ground Two, Wilkins asserts that the admission of an out-of-court identification of Wilkins by Georgette White violated due process because White later recanted the identification in writing and because her opportunity to see the perpetrator's face was limited.

Wilkins raised this claim on direct appeal.  Relying on *Manson v. Brathwaite*, 432 U.S. 98 (1977), he argued that "the November 25, 1997 photographic identification represented a pretrial identification procedure so unnecessarily suggestive and conducive to irreparable mistaken identification as to result in a denial of Mr. Wilkins' right to due process." (ECF No. 17-8 at 33.)  The Appellate Division rejected the claim:

> Georgette identified defendant in a photo lineup three
> days after the crimes, as well as in court.  The jury
> heard that Georgette recanted her photo identification
> and gave the police a written recantation statement
> after being confronted by defendant at the jail.
> There was evidence that defendant attempted

13

unsuccessfully to persuade Pauline to recant her
identification as well.

The record supports the trial judge's determination
after a *Wade* hearing that defendant failed to meet his
burden of proving that the photo lineup procedure was
impermissibly suggestive and that there was a
substantial likelihood of misidentification.  There
was no error in allowing evidence of Georgette's out-
of-court photo identification. Despite Kevin's initial
failure to name the attackers and Georgette's
recantation, there was ample evidence from which the
jury could conclude beyond a reasonable doubt that
defendant was guilty on all charges.

(ECF No. 17-10 at 6)(footnote omitted).

This Court is required to presume the correctness of the

Appellate Division's factual findings that (1) Georgette

identified Wilkins three days after the incident in a photo

lineup; (2) Georgette recanted her identification in writing

after being confronted by Wilkins at the jail; (3) Georgette

identified Wilkins as a perpetrator at his trial; and (4) the

photo identification procedure was not suggestive.  Wilkins has

not rebutted these findings by clear and convincing evidence.

*See* 28 U.S.C. § 2254(e)(1).  Nor has he shown that the Appellate

Division's factual findings were unreasonable in light of the

evidence presented.  Therefore, Wilkins is not entitled to

habeas relief on this claim under 28 U.S.C. § 2254(d)(2).

This Court must also consider whether the New Jersey

courts' adjudication of this claim was contrary to, or an

14

unreasonable application of, Supreme Court precedent. *See* 28
U.S.C. § 2254(d)(2).  The Supreme Court considered the claim
that a defendant's pretrial identification by means of
photographs was so unnecessarily suggestive as to deny him due
process in *Simmons v. United States*, 390 U.S. 377, 383 (1968).
In that case, two men robbed a bank.  The next day, the FBI
separately showed five bank employees six group photographs
which included defendants Simmons and Andrews; each of the five
employees identified Simmons but not Andrews.  The government
relied on the in-court identification of Simmons but did not
introduce the photographs or the pretrial identifications.  The
Supreme Court held "that convictions based on eyewitness
identification at trial following a pretrial identification by
photograph will be set aside on that ground only if the
photographic identification procedure was so impermissibly
suggestive as to give rise to a very substantial likelihood of
irreparable misidentification." *Id.* at 384.  Applying the
standard, the Court concluded that the pretrial identification
procedure used by the FBI did not violate due process where it
was not suggested that the photo identification was unnecessary,
there was "little chance that the procedure utilized led to
misidentification of Simmons," and the evidence did not show

15

that the FBI agents suggested which persons in the photos were
under suspicion. *Id.* at 385.

In *Manson v. Brathwaite*, 432 U.S. 98 (1977), a § 2254
petitioner challenged his Connecticut conviction for possession
and sale of heroin, arguing that the admission of identification
testimony by Glover, an undercover police officer, deprived him
of due process.  Two days after Glover purchased heroin from a
black man out of an apartment in Hartford, another police
officer who suspected Brathwaite (based on Glover's
description), obtained his photo from the Records Division and
left the photo on Glover's desk.  Glover identified the person
in this photo as the person who had sold him heroin.  Brathwaite
challenged the identification on due process grounds in the
state court and then in his § 2254 petition.  The District Court
dismissed the § 2254 petition but the Second Circuit reversed
with instructions to issue the writ unless the State retried
Brathwaite, finding that the examination of the single
photograph was suggestive.  The Supreme Court reversed because
"[t]he admission of evidence of a showup without more does not
violate due process," *id.* at 106 (citation omitted), and "[t]he
admission of testimony concerning a suggestive and unnecessary
identification procedure does not violate due process so long as

16

the identification possesses sufficient aspects of reliability."
*Id.*  The Supreme Court held that admissibility of the
unnecessarily suggestive one-photo identification testimony
turned on balancing "the opportunity of the witness to view the
criminal at the time of the crime, the witness's degree of
attention, the accuracy of his prior description of the
criminal, the level of certainty demonstrated at the
confrontation, and the time between the crime and the
confrontation," against "the corrupting effect of the suggestive
identification itself." *Id.* at 114.  Applying this test, the
Court concluded that the "indicators of Glover's ability to make
an accurate identification [were] hardly outweighed by the
corrupting effect of the challenged identification itself[, even
though] identifications arising from single-photograph displays
may be viewed in general with suspicion." *Id.* at 116.

Wilkins has not cited Supreme Court precedent holding that
an out-of-court photographic identification procedure, which is
not suggestive, is inadmissible on due process grounds because
the person recants after being confronted by the defendant and
then identifies the defendant at trial.  In any event, *Simmons*
and *Brathwaite* establish that even where the police use an
unduly suggestive pretrial identification procedure, the

17

identification is admissible so long as the reliability factors outweigh the corrupting effect of the suggestive procedures.

In this case, after conducting a hearing under *United States v. Wade*, 388 U.S. 218 (1967), the trial court assessed suggestiveness and reliability and rejected the challenge to the admissibility of the identification. (ECF No. 17-31 at 41-43.) The Appellate Division affirmed the trial court's findings.  The New Jersey courts did not unreasonably apply Supreme Court precedent in determining that the out-of-court identification by Georgette White was admissible. *See* 28 U.S.C. § 2254(d)(1); *Coleman v. Alabama*, 399 U.S. 1, 7 (1970) (holding that where "identifications were entirely based upon observations at the time of the [incident] and not at all induced by the conduct" of the pretrial identification procedures, the identification does not violate due process).  Because Wilkins has not shown that this adjudication was contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or based on an unreasonable determination of the facts in light of the evidence presented, he is not entitled to habeas relief on Ground Two.

18

C.   Ineffective Assistance of Counsel

Wilkins asserts in Ground Three that counsel was constitutionally ineffective in failing to object to the hearsay testimony of Detective McFarland indicating that Michael White had identified Wilkins as the gunman.

Wilkins raised this ground in his first petition for post-conviction relief.  The Appellate Division affirmed without discussion the trial court's findings and conclusions.  See *State v. Wilkins*, 2007 WL 3170185 at *2.  The trial court rejected the claim as follows:

> [T]he Defendant is correct in classifying the
> detective's testimony regarding Mr. White's statement
> as hearsay within hearsay which does not meet an
> exception.  Nevertheless, the Defendant's argument
> that this amounted to ineffective assistance of
> counsel still fails because he does not show that
> there is a reasonable probability that the outcome
> would have been different had counsel objected to the
> testimony.  Furthermore, in the event that the
> objection was made and sustained, there was sufficient
> evidence to find Defendant guilty.  Ms. White
> identified Defendant at the trial, as did Georgette
> and Kevin White.  Moreover, co-defendant, Hobbs,
> testified that Defendant shot the victim.

(ECF No. 17-19 at 171-72.)

The Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both

19

of which must be satisfied.  *See Strickland v. Washington*, 466
U.S. 668, 687 (1984).  First, the defendant must "identify the
acts or omissions of counsel that are alleged not to have been
the result of reasonable professional judgment." *Id.* at 690.
The court must then determine whether, in light of all the
circumstances at the time, the identified errors fell "below an
objective standard of reasonableness[.]" *Hinton v. Alabama,* 134
S.Ct. 1081, 1083 (2014) (*per curiam*).  To establish prejudice,
the defendant must show that "there is a reasonable probability
that the result of the trial would have been different absent
the deficient act or omission." *Id.,* 134 S.Ct. at 1083.  "When a
defendant challenges a conviction, the question is whether there
is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting guilt."
*Id.* at 1089 (quoting *Strickland,* 466 U.S. at 695).

In this case, as explained above, the New Jersey courts
rejected the ineffective assistance claim on the ground that
Wilkins did not show that there was a reasonable probability
that, if counsel had objected to the hearsay identification and
the objection had been sustained, the outcome of the proceeding
would have been different, given that four other witnesses
identified Wilkins as the shooter.  This determination was

consistent with, if not demanded by, *Strickland*. *See, e.g.,*
*Saranchak v. Secretary, Pa. Dept. of Corrections*, 802 F.3d 579,
592 (3d Cir. 2015) (noting that a court "must consider the
strength of the evidence in deciding whether the *Strickland*
prejudice prong has been satisfied," the Third Circuit held
that, "[e]ven reconsidering the impact of trial counsel's errors
in the aggregate, those errors did not contribute to a
reasonable probability of a different outcome given the strength
of the Commonwealth's case.") (citations and internal quotation
marks omitted).  Wilkins is not entitled to habeas relief on
Ground Three.

D.   Claim Under Brady v. Maryland

In Ground Four, Wilkins asserts that the prosecutor
unconstitutionally withheld from the defense the December 24,
1997, visitors log from Burlington County Jail which would have
shown that Pauline White could not have identified Wilkins as
the shooter in the visiting area of the jail because Wilkins had
no visitors on the date Pauline visited her son.

Wilkins raised this as an ineffective assistance of counsel
ground on post-conviction relief.  The Appellate Division
affirmed the trial court's findings without discussion. *See*
*State v. Wilkins,* 2007 WL 3170185 (N.J. Super. Ct., App. Div.,

21

Oct. 31, 2007). The trial court rejected the claim on the ground that the jail log was not exculpatory under *Brady v. Maryland,* 373 U.S. 83 (1963):

> Defendant claims that Pauline White identified Stephen McNeil as the shooter while visiting her son at Burlington County Jail. However, Defendant has not provided any proof that his allegation has any merit. The State is correct in stating that even if Stephen McNeil had a visitor that day, not the Defendant, that information does not exculpate the Defendant. Moreover, Ms. White testified at the trial that Defendant was the shooter.

(ECF No. 17-19 at 173.)

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see also Kyles v. Whitley*, 514 U.S. 419, 433 (1995); *Giglio v. United States*, 405 U.S. 150 (1972). "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "The evidence is material

22

only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 682 (1985).

Under § 2254(e)(1), this Court must presume the correctness of the New Jersey courts' factual findings that (1) Wilkins presented no evidence indicating that Pauline White identified Stephen McNeil as the shooter while visiting her son at Burlington County Jail, and (2) she identified Wilkins at trial. Wilkins has not rebutted this presumption of correctness by clear and convincing evidence, and he has not established that the New Jersey courts unreasonably determined the facts in light of the evidence presented in the State court proceeding under § 2254(d)(1).

In addition, the New Jersey courts did not unreasonably apply *Brady* or other Supreme Court precedent in determining that the *Brady* claim failed because the complete visitation log for the jail was not exculpatory or impeaching. *See, e.g., Moore-El v. Luebbers*, 446 F. 3d 890, 900 (8th Cir. 2006) (state court's finding that there was no credible evidence that there was an agreement for leniency between prosecutor and prosecution

23

witness was entitled to presumption of correctness, and
petitioner's *Brady* claim based on state's failure to disclose
purported agreement did not rebut presumption); *Shabazz v.
Artuz*, 336 F.3d 154 (2nd Cir. 2003) (habeas petitioner did not
present evidence sufficient to rebut presumption of correctness
afforded state court factual findings in rejecting *Brady* claim
regarding undisclosed promises of leniency to prosecution
witness); *cf. Wetzel v. Lambert,* 132 S. Ct. 1195, 1198 (2012)
(vacating the granting of a writ and remanding because "[t]he
Third Circuit overlooked the determination of the state courts
that the notations were, as the District Court put it, 'not
exculpatory or impeaching' but instead 'entirely ambiguous."").
Because the New Jersey courts did not unreasonably apply *Brady*,
Wilkins is not entitled to habeas relief on Ground Four.

                IV.  CERTIFICATE OF APPEALABILITY

     The AEDPA provides that an appeal may not be taken to the
court of appeals from a final order in a § 2254 proceeding
unless a judge issues a certificate of appealability on the
ground that "the applicant has made a substantial showing of the
denial of a constitutional right."  28 U.S.C. § 2253(c)(2).
This Court denies a certificate of appealability because jurists

of reason would not find it debatable that dismissal of the Petition is correct.

## V.   CONCLUSION

This Court will dismiss the Petition with prejudice and deny a certificate of appealability.  An Order consistent with this Opinion will be filed.


                                     s/Noel L. Hillman
                                   NOEL L. HILLMAN, U.S.D.J.

Dated:  July 28, 2016

At Camden, New Jersey

25